# EXHIBIT A

Henry P. Wolfe, Esq. NJ Attorney ID 031942005
The Wolf Law Firm, LLC
1520 U.S. Hwy. 130, Suite 101
North Brunswick, NJ 08902
(732) 545-7900 – Phone
(732) 545-1030 – Fax

Yongmoon Kim – NJ Attorney ID 026122011
Kim Law Firm, LLC
411 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
(201) 273-7117 – Phone and Fax



Norman Walsh, on behalf of himself and
others similarly situated,

      Plaintiff,

              vs.

Defenders, Inc. d/b/a Protect Your Home,
ADT Security Services, Inc., and B&R
Recovery, LLC

      Defendants.

SUPERIOR COURT OF NEW JERSEY
MIDDLESEX COUNTY: LAW DIVISION

CIVIL ACTION

DOCKET NO: 7520-15

**CLASS ACTION COMPLAINT
AND JURY DEMAND**

Plaintiff, Norman Walsh, on behalf of himself and others similarly situated states for his Complaint as follows:

### PRELIMINARY STATEMENT

1.    This is a putative consumer protection class action charging Defendants, sellers of home security equipment and monitoring services, with entering into contracts with New Jersey consumers that impose unlawful penalties, contain unlawful provisions buried in an adhesion contract, and otherwise facially violate New Jersey consumer protection laws, including the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 *et seq.*, N.J.A.C. 13:45A-16.1 *et seq.*, Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14, *et seq.*

2.    Most notably, Defendants' standard alarm monitoring contract includes an unconscionable early termination provision that requires consumers to pay 75% of an entire three-year term of alarm monitoring services, even if the customer terminates very early in the contract and Defendants provide no services for the majority of the contract. This provision violates longstanding New Jersey law prohibiting contractual penalty clauses, and also violates the CFA's prohibition against unconscionable commercial practices.

3.    Plaintiff is a consumer who entered into an alarm installation and monitoring

contract with Defendant for his home in Oak Ridge, New Jersey, using its standard, violative contracts.   After terminating the contract early (in part due to untimely and unsatisfactory services) Defendants charged Plaintiff an exorbitant early termination fee.

4.      As set forth more fully below, Plaintiff brings this action seeking treble damages for himself based on Defendants' unconscionable early termination fee provision violations of the CFA, and statutory damages for himself and the class based on Defendants' violations of TCCWNA.  Plaintiff further seeks declaratory and injunctive relief for all class members whose contracts were terminated prior to the expiration of the three-year term.

## PARTIES

5.      Defendant ADT Security Services, Inc. ("ADT") is a foreign corporation with its New Jersey registered agent located in West Trenton, New Jersey.

6.      Defendant Defenders Inc. d/b/a Protect Your Home ("PYH") is a foreign corporation with its New Jersey registered agent located in West Trenton, New Jersey.

7.      Defendant B&R Recovery, LLC ("B&R") debt-buyer who is engaged in the business of purchasing or claiming to purchase allegedly defaulted debts originally owed to others and incurred for personal, family, or household purposes.

8.      Plaintiff Norman Walsh is an individual who resides in Oak Ridge, New Jersey.

## VENUE

9.      Venue is proper in Middlesex County because each Defendant regularly conducts business there.

## ALLEGATIONS OF FACT

10.     ADT is a national seller of alarm system equipment and monitoring services.

11.     During all times relevant to this action, PYH was an authorized dealer for ADT.

12.     In September 2010, PYH solicited Plaintiff to purchase ADT alarm system installation and monitoring services for his home in Oak Ridge, New Jersey.

13.     Plaintiff agreed to sign up for services based on PYH's assurance that it would provide him with equipment and services to provide "freeze alerts" so that when he and his wife were away from their home, they would be alerted when the temperature dropped below freezing so they could have a family member come to the house to turn up the heat to avoid pipe freezing.

14.     On September 13, 2010, PYH offered two written form contracts to Plaintiff, one with the heading "Schedule of Protection" (attached as **Exhibit A**), which listed the equipment to

be installed and the price of the equipment, and another with the heading "Alarm Services Contract" (attached as **Exhibit B**) which set forth the alarm monitoring services to be provided.

15.     Plaintiff signed the Schedule of Protection and Alarm Services Contract on September 13, 2010.

16.     The Schedule of Protection equipment to be installed at a cost of $137.17, which Plaintiff paid by credit card.

17.     The $137.17 equipment charge on the Schedule of Protection included $49 for a "freeze sensor" which PYH told Plaintiff was needed for "freeze alerts" but which would have to be installed at a later date when PYH obtained the part.

18.     The Schedule of Protection and Alarm Services Contract were form contracts that were drafted by ADT and provided to its dealers, including PYH.

19.     The Alarm Services Contract was for monitoring services to be assigned to and provided by ADT.

20.     PYH and ADT were co-sellers of the services contracted for in the Alarm Services Contract.

21.     The Alarm Service Contract included a standard, preprinted provision for setting the "initial term" of the agreement for three (3) years of alarm monitoring services.

22.     The Alarm Service Contract included a handwritten provision under which Plaintiff was to pay monthly alarm service charges of $33.99.

23.     The Alarm Services Contract includes numerous provisions, printed as boilerplate on the second page of the contract, that violate consumers' rights and the Defendants' responsibilities under New Jersey law, including but not limited to the following:

> a. A provision at paragraph 2, stating "If you terminate this contract during its initial term, you will pay us an amount equal to 75% of the charges to be paid by your during the remaining initial term", which is an unconscionable fee in violation of the Consumer Fraud Act, N.J.S.A. 56:8-2, and contrary to New Jersey case law precluding enforcement of such penalty clauses.

> b. A provision at paragraph 6, exempting Defendants from liability, including liability based on gross negligence or for statutory violations, contrary to New Jersey case law precluding such waivers, contrary to TCCWNA at N.J.S.A. 56:12-16, which prohibits provisions that waive rights under that statute, and contrary to the mandatory treble damages and fee-shifting provisions of the CFA, at N.J.S.A. 56:8-19.

> c. A provision at paragraphs 6 and 7 limiting damages and setting the consumer's exclusive remedy against Defendants as the greater of $500 or 10% of the annual service

charge under the contract, regardless of what the consumer's actual harm or legal entitlement, in violation of the Consumer Fraud Act's prohibition against unconscionable commercial practices and New Jersey case law precluding enforcement of such unconscionable clauses.

d.  A provision at paragraph 8 requiring the consumer to completely indemnify Defendants against suits by third parties, including payment of the Defendants' attorney's fees, regardless of the Defendants' wrongdoing or any other circumstances, in violation of the Consumer Fraud Act's prohibition against unconscionable commercial practices and New Jersey case law precluding enforcement of such unconscionable clauses.

d.  A provision at paragraph 10, imposing a strict, one-year "private statute of limitations" provision, requiring any actions to be filed within one year, contrary to New Jersey statutes of limitation and case law limiting the extent to which businesses may shorten them.

24.    The Alarm Services Contract contains. disclaimers varying the degree of enforceability of certain provisions of the contract depending on the applicable law, without specifying whether the provision is enforceable in New Jersey, including:

a.  A provision at paragraph 18 that states the consumer rejected a "familiarization period" by initialing the appropriate line on the first page of the contract, "except where familiarization is required by law", without saying whether or not "familiarization" is required under New Jersey law;

b.  A provision at paragraph 10 that states that the 1 year "private statute of limitations" period is enforceable only the extent of "the shortest duration permitted under applicable law if such period is greater than one (1) year" without saying whether the 1 year contractual statute of limitations is permitted under New Jersey law.

25.    On September 13, 2010, PYH installed a basic alarm system, without the freeze detector which it promised to install at a later date.

26.    During the initial weeks of service, the basic alarm system did not work properly, and so Plaintiff became concerned that it would not meet his primary purpose of warning him of freezing conditions while he was away from his home.  Plaintiff therefore contacted PYH and informed them that he was no longer interested in and was cancelling the services.

27.    After Plaintiff cancelled the services, Defendants imposed against him a cancellation penalty of $917.73, which is 75% of three (3) years of alarm monitoring at $33.99 per month.

28.    Some time after imposing the penalty against Plaintiff, Defendants assigned the account to a third party debt collector, B&R Recovery, LLC, which filed a lawsuit against him in

the Superior Court of New Jersey, Special Civil Part, Passaic County, DC-009323-15, seeking $917.73.

29. Defendants' demand for $917.73 constitutes improper imposition of a consumer debt, and Plaintiff has suffered ascertainable loss in that amount.

30. Plaintiff suffered further ascertainable loss in the amount of all payments made to Defendants.

## CLASS ACTION ALLEGATIONS

31. This action is brought and may properly proceed as a class action, pursuant to the provisions of Rule 4:32 of the New Jersey Court Rules.

32. Plaintiff seeks certification of a class and a subclass.

33. Plaintiff seeks to certify the class pursuant to R. 4:32-1(b)(3), seeking statutory monetary damages for all class members based on Defendants' violations of TCCWNA.

34. Plaintiff seeks to certify the subclass pursuant to R. 4:32-1(b)(2), seeking declaratory and injunctive relief, or alternatively money damages, for all class members whose contracts were terminated prior to the end of the expiration of the 5 year term.

The class and subclass are initially defined as follows:

**The Class:** All natural persons who entered into an Alarm Services Contract with Defendant Defenders, Inc. using a form contract the same as or similar to the contract used in the transaction with Plaintiff for alarm services for a New Jersey residential house or apartment on or after the date six years prior to the date of filing of this action.

**The Subclass:** All members of the class whose contracts were terminated prior to the end of the contract term, and who were assessed an early termination fee by Defendants.

For the purposes of the Class definition, the term "a form contract the same as or similar to the contract used in the transaction with Plaintiff" means a form contract that included the any of the provisions referenced in paragraphs 23 & 24 above.

35. The class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

36. There are questions of law and fact common to the members of the class that predominate over questions affecting only individuals. These common questions include:

a. Whether Defendants' form contracts contain provisions that violated their customers' rights or Defendants' responsibilities under the CFA or New Jersey case law;

b. Whether Defendants' form contracts contain provisions that violate TCCWNA by waiving consumers' rights under that statute;

c. Whether Defendants' form contracts contain provisions that violate TCCWNA by stating that they may not be enforceable under applicable state law without specifying whether they are applicable under New Jersey law.

d. Whether by offering the contracts with the above violations to consumers, Defendants violated TCCWNA, and if so whether each class member is entitled to statutory damages of $100;

e. Whether the early termination clause in Defendants' standard contract violates the CFA's prohibition against unconscionable commercial practices;

37.     Plaintiff's claims are typical of the claims of the members of the class she seeks to represent because all such claims arise from Defendant's standardized contracts for alarm sales, installation, and monitoring services.

38.     Plaintiff has no interests antagonistic to those of the class.

39.     The class, of which Plaintiff is a member, is readily identifiable from Defendants' business records.

40.     Plaintiff will fairly and adequately protect the interests of the class, and has retained competent counsel experienced in the prosecution of consumer litigation.  Proposed class counsel has investigated and identified potential claims in the action, and has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

41.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

42.     The questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

43.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and all members of the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

44.     A class action will cause an orderly and expeditious administration of the claims of the class and will foster economies of time, effort and expense.

45.     Plaintiff does not anticipate any difficulty in the management of this litigation.

## CLASS CLAIMS

### COUNT I: TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT
### As to the Class

46.     Plaintiff on behalf of himself and others similarly situated restates all prior allegations as though fully pled here.

47.     Plaintiff and the putative class members are consumers, and Defendants are sellers and or assignees, subject to the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 *et seq*.

48.     The Alarm Services Contract and Schedule of Protection are consumer contracts or notices subject to TCCWNA.

49.     The Alarm Services Contract and Schedule of Protection contracts were provided to Plaintiff and putative class members by Defendants in the course of their business.

50.     Defendant violated TCCWNA at N.J.S.A. 56:12-15 by offering and/or entering into written consumer contracts that contained provisions that violated a clearly established right of the consumer or a responsibility of the Defendant as established by State or federal law.

51.     Specifically, Defendants' standard Alarm Services Contract includes:

a. A provision at paragraph 2, stating "If you terminate this contract during its initial term, you will pay us an amount equal to 75% of the charges to be paid by your during the remaining initial term" which is an unconscionable fee in violation of the Consumer Fraud Act, N.J.S.A. 56:8-2, and contrary to New Jersey case law precluding enforcement of such penalty clauses.

b. A provision at paragraph 6, exempting Defendants from liability, including liability based on gross negligence or for statutory violations, contrary to New Jersey case law precluding such waivers, contrary to TCCWNA at N.J.S.A. 56:12-16, which prohibits provisions that waive rights under that statute, and contrary to the mandatory treble damages and fee-shifting provisions of the CFA, at N.J.S.A. 56:8-19.

c. A provision at paragraphs 6 and 7 limiting damages and setting the consumer's exclusive remedy against Defendants as the greater of $500 or 10% of the annual service charge under the contract, regardless of what the consumer's actual harm or legal entitlement, in violation of the Consumer Fraud Act's prohibition against unconscionable commercial practices and New Jersey case law precluding enforcement of such unconscionable clauses.

d.  A provision at paragraph 8  requiring the consumer to completely indemnify Defendants against suits by third parties, including payment of the Defendants' attorney's fees, regardless of the Defendants' wrongdoing or any other circumstances, in violation of the Consumer Fraud Act's prohibition against unconscionable commercial practices and New Jersey case law precluding enforcement of such unconscionable clauses.

d.  A provision at paragraph 10, imposing a strict, one-year "private statute of limitations" provision, requiring any  actions to be filed within one year, contrary to New Jersey statutes of limitation and case law limiting the extent to which businesses may shorten them.

52.    The Defendants' standard Alarm Services Contract also violates TCCWNA at N.J.S.A. 56:12-16, by including disclaimers varying the degree of enforceability of certain provisions of the contract depending on the applicable law, without specifying whether the provision is enforceable in New Jersey, including:

a.  A provision at paragraph 18 that states the consumer rejected a "familiarization period" by initialing the appropriate line on the first page of the contract, "except where familiarization is required by law", without saying whether or not "familiarization" is required under New Jersey law;

b.  A provision at paragraph 10 that states that the 1 year "private statute of limitations" period is enforceable only the extent of "the shortest duration permitted under applicable law if such period is greater than one (1) year" without saying whether the 1 year contractual statute of limitations is permitted under New Jersey law.

53.    Defendants violated TCCWNA at N.J.S.A. 56:12-15 as to Plaintiff and all putative Class members by offering them written consumer contracts that contained provisions that violated other New Jersey laws.

54.    Defendants further violated TCCWNA as to Plaintiff and all putative Class members by offering them written consumer contracts that contained waivers and savings clauses prohibited by N.J.S.A. 56:12-16.

55.    Therefore, Plaintiff and the putative Class members are entitled to statutory damages of no less than $100 per violation plus reasonable attorney's fees and costs from Defendants, pursuant to N.J.S.A. 56:12-17.

## COUNT II:  VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
### (For Equitable Relief As to the Subclass, and Damages for Plaintiff)

56.     Plaintiff on behalf of himself and others similarly situated restates all prior allegations as though fully pled here.

57.     It is an unlawful act under the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 *et seq.*, to engage in any "unconscionable commercial practice, deception, fraud, [or] misrepresentation ... in connection with the sale ... of any merchandise." N.J.S.A. 56:8-2.

58.     In the present case, Defendant committed an unconscionable commercial practice against Plaintiff by assessing an early termination penalty of 75% of three years of alarm monitoring services, even though Plaintiff cancelled his contract shortly after it started.

59.     Plaintiff suffered an ascertainable loss in the amount of Defendants' unlawful demand for the $917.73, which Defendant's debt collector has attempted to collect in the Special Civil Part complaint filed against Plaintiff.

60.     Because Plaintiff suffered ascertainable loss caused by Defendants' violations of the CFA, Plaintiff has standing to seek all remedies authorized by N.J.S.A. 56:8-19, including treble damages for himself, injunctive and declaratory relief, and reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiff requests the following relief, to be assessed against Defendants jointly and severally:

a.  Certification of the Class, as defined herein, *supra,* for monetary relief pursuant to R. 4:32-1(b)(3);

b.  As to Count I, a judgment in favor of Plaintiff and the Class for statutory damages under TCCWNA at N.J.S.A. 56:12-17;

c.  Certification of the Subclass, as defined herein, *supra,* for declaratory and injunctive relief pursuant to R. 4:32-1(b)(2), or alternatively certifying the class for money damages under R. 4:32-1(b)(3);

d.  A declaratory judgment that Defendants violated the CFA, New Jersey decisional law, and TCCWNA as to the Subclass;

e.  A judgment for injunctive relief requiring Defendants to send formal notice to all Subclass members, advising them of the declaratory ruling and of their right to seek remedies under the CFA, on their own and independent of this action, if they suffered an ascertainable loss resulting from Defendants' violations;

f.  A judgment for injunctive relief enjoining Defendants from engaging in future violations of the CFA, New Jersey decisional law, and TCCWNA;

g.  Appointment of Plaintiff as class representative and The Wolf Law Firm, LLC and Kim Law Firm LLC as counsel for the Class and Subclass;

h.  As to Plaintiff only,  treble damages, pursuant to the CFA at N.J.S.A. 56:8-19;

i.  For reasonable attorneys' fees and costs of suit in connection with this action, pursuant to the CFA at N.J.S.A. 56:8-19, and TCCWNA at N.J.S.A. 56:12-17;

j.  For pre-judgment and post-judgment interest; and

k.  For such other and further relief as the Court deems equitable and just.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**NOTICE TO ATTORNEY GENERAL OF ACTION**

A copy of the complaint will be mailed to the Attorney General of the State of New Jersey within ten days after the filing with the Court, pursuant to N.J.S.A. § 56:8-20.

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to R. 4:25-4, Andrew R. Wolf, is hereby designated as trial counsel for the Plaintiff, in the above matter.

**CERTIFICATION**

I certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated, except that the assignee of Defendants has filed a collection action in the Superior Court of New Jersey, Law Division, Special Civil Part, Passaic County against Plaintiff, B&R Recovery v. Norman Walsh, Docket No. DC-009323-15.  Plaintiff intends to move to consolidate that action with the present matter.  I further certify that I know of no party who should be joined in the action at the time.

THE WOLF LAW FIRM, LLC
Attorneys for Plaintiff

By:  _____
Henry P. Wolfe

Dated:  December 22, 2015

# EXHIBIT A

## CLASS ACTION COMPLAINT & JURY DEMAND
*Walsh v. Defenders, Inc., d/b/a Protect Your Home, et al.*
Docket No. TO BE SUPPLIED

**SCHEDULE OF PROTECTION**    Monitoring Account Number:

The ADT Authorized Dealer Program is an approved program of ADT Security Services, Inc. If there are any questions regarding the program or your dealer, please call ADT at 800-539-9690

Dealer Name: Protect Your Home

Dealer Number:

This AGREEMENT is made and entered into this _____ day of _____, 20___ by and between Dealer and _____ ("Purchaser" or "Subscriber"),

_____ ("Premises"), _____

STREET & NUMBER, STATE, ZIP CODE            HOME PHONE        BUSINESS PHONE

This Schedule of Protection is incorporated by reference into the Alarm Services Agreement made this date between Dealer and Subscriber, the terms and conditions of which fully apply to this Schedule of Protection.

☐ RESIDENTIAL        ☐ COMMERCIAL        ☑ WIRELESS        ☐ APARTMENT

| CODE | QUANTITY | DESCRIPTION | PRICE | EXTENDED PRICE |
|---|---|---|---|---|
| | | **Essential Package** | | |
| | | Base System ($850 Value) - SELECT ONLY ONE OF THE FOLLOWING: | $____99.00 | 79.20 |
| | | ☐ *Simon Base(1 Key, 2 D/W, 1 Motion)*  ☑ *Simon Takeover (1 Keyfob only)* | | |
| | | ☐ *Concord 4 (1 Concord 4 Panel, 1 Keypad, 1 Keyfob)* | | |
| R-015-PS | | P.S. (Choose one)  ☐ DOOR/WINDOW  ☐ KEY FOB  ☐ MED PENDANT | $49 | 49 |
| R-037-PS | | ☐ SHOCK DETECTOR | $79 | |
| | | USAA PACKAGE *(Includes 4 D/W, 1 Motion, 1 Smoke - Equipment not eligible for upgrades/swaps; not eligible for 2-Way Voice, not eligible for Cell Back-Up)* | $339 | |
| ITEMS SWAPPED FROM 1-2-1 | | ___ Keychain Remote  ___ Door/Window  ___ Motion Detector | | |
| | | **Additional Protection Devices** | | |
| R162HT | | Wireless Hi-Tech Handheld Touchpad (Concord) | $219 ea. | |
| R162HW | | Hardwire Touchpad (Concord) | $219 ea. | |
| R162TT | | Wireless 2-Way Talking Touchpad (Simon) | $219 ea. | |
| R099CB | | Cellular Back-Up      TG-4   TG-1   DSC-GS3060  *(circle one)* | $149 ea. | |
| R98CD | | Crystal Door/Window Sensor      Doors      Windows | $129 ea. | |
| R162DT | | DTIM (Dialog Telephone Interface Module) | $219 ea. | |
| R106ES | | Exterior Siren (Not Available for all Applications) | $149 ea. | |
| R126FD | | Flood Sensor | $169 ea. | |
| R126FZ | | Freeze Sensor | $169 ea. | |
| R162GB | | Glass Break Detector | $219 ea. | |
| R169HC | | Heat Communicator | $229 ea. | |
| R090KR | | Keychain Remote (w/Personal Panic) | $119 ea. | |
| R098MP | | Medical/Emergency Pendant | $129 ea. | |
| R169MD | | Motion Detector | $229 ea. | |
| R126OH | | Overhead Garage Door Sensor | $169 ea. | |
| R194RK | | Repeater Kit | $219 ea. | |
| R107SD | | Shock Detector | $149 ea. | |
| R169SC | | Smoke Communicator (Monitored Photo-Electric) | $229 ea. | |
| RWLTSK | | Wireless Touchscreen Keypad (Simon) | $289 ea. | |
| | | **Exception Items (Hardwire Contacts, Etc.)** | | |
| R015SU | | Shock Upgrade (requires trade-in of D/W) | $20 ea. | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Subscriber acknowledges that: (a) Dealer has explained the full range of protection, equipment, and services available to Subscriber, (b) additional protection over and above that provided herein is available and may be obtained from Dealer at an additional cost to the Subscriber, and (c) Subscriber desires and has contracted for only the equipment and services itemized on this agreement.

| DATE | PURCHASER'S SIGNATURE | | SUBTOTAL | |
|---|---|---|---|---|
| INSTALLATION DATE GIVEN | INSTALLATION TECHNICIAN NAME | | % TAX | |
| DEALER LICENSE NUMBER | SALES REPRESENTATIVE NAME | | TOTAL | |
| | | | LESS DEPOSIT | |
| | | | BALANCE DUE | 0 |

Ver 2.5.10        WHITE-BRANCH   CANARY-ACCOUNTING   PINK-INSTALLATION   GOLD-SUBSCRIBER

# EXHIBIT B

CLASS ACTION COMPLAINT & JURY DEMAND

*Walsh v. Defenders, Inc., d/b/a Protect Your Home, et al.*
Docket No. TO BE SUPPLIED

*Miller 201-663-0090*

**AUTHORIZED DEALER**

PRINT CLEARLY
IN CAPITAL LETTERS
(USE BLACK INK ONLY)

The ADT Authorized Dealer Program is an
ADT Security Services, Inc. ("ADT") approved
Program of independent ADT Authorized Dealers.
Please refer any questions concerning the
Program or the Dealer to ADT at 800-539-9690.

| 1 | 2 | 3 | A | B | C |

○ Commercial   ○ Residential

Place Dealer Label Here
(If there is no label, please print Dealer Name
and Number in this box)

Monitoring Account Number

**ALARM SERVICES CONTRACT**

Dealer's License No: _____

ADT Authorized Dealer Name and
Address ("We" or "Us" or "Our")

IF FAMILIARIZATION PERIOD IS
REJECTED INITIAL HERE _____

(the "Monitored Location"), and we, the Dealer set forth above, whose corporate offices are located at the Address set forth above. We agree to sell and install
the security alarm system (the "Equipment") at the Monitored Location and to provide Monitoring Services and Limited and Extended Limited Warranty Service,
if applicable (collectively, the "Services"), as indicated below and as more fully described herein, to you, and you agree to pay us the amounts summarized
below, upon and subject to the terms and conditions of this Contract.

**Communications Authorization:** You
hereby authorize Dealer, its assignee,
or affiliates to furnish information and/
or updates regarding your security
system and/or third party products and
services available to you to the contact
information provided by you. You may
unsubscribe or opt-out by emailing
donotcontact@adt.com or by calling
888-DNC4ADT (888-362-4238).
Initial here _____

**Basic Monthly
Service, Burglary** $ [    ]

Service Includes: Customer Monitoring Center
Signal Receiving and Notification Service
for Burglary, Manual Fire, and Manual Police
Emergency.

**Basic Monthly Service, Burglary with Extended
Limited Warranty (Residential Customer Only)** $ [    ]

Service Includes: Customer Monitoring Center Signal Receiving and Notification Service
for Burglary, Manual Fire, and Manual Police Emergency along with Extended Limited
Warranty during which you will be billed $25 for each trip made to the Monitored Location
after the Limited Warranty period.

Optional Electronic Monitoring Services:

| | Monthly Rate: |
|---|---|
| ○ Remote Access/Keyfob | $ |
| ○ Fire Alarm/Smoke Detection | $ |
| ○ Carbon Monoxide | $ |
| ○ Two Way Voice | $ |
| ○ Cellguard Backup | $ |
| ○ Investigator Response | $ |
| ○ MPF | $ |
| ○ Other | $ |
| **Total Monthly Service Charge** $ | |

**BILLING FREQUENCY,
FOR ALL CHARGES:**
○ Monthly
○ Quarterly
○ Semi-Annually
○ Annually

**AUTO PAYMENT INFO:**
○ Checking Account
○ Savings Account
○ Debit/Credit Card
○ Other

Affinity Name _____

See Attached Schedule of Protection,
if Applicable, for Terms and
Conditions of Purchase

Purchase Amount Total
(Proof of payment required)

**TERM OF CONTRACT:** The initial term of this Contract is for three (3) years. Our alarm monitoring and notification services will begin when the equipment is installed
and is operational, and the necessary communications connection is completed. If this is a "Residential" Contract, this Contract will automatically renew
for successive thirty (30) day term(s) unless terminated by either party's written notice at least thirty (30) days before the end of the then-current term. If this is a
"Commercial" Contract, this Contract will automatically renew for successive one (1) year term(s) unless terminated by either party's written notice at least thirty (30)
days before the end of the then-current term. If terminated, this contract ends on the last day of the then-current term.

**Notice to Consumers** – This is to advise you that Authorized Dealer is an independent Authorized Dealer of ADT Security Services, Inc. The company with which
you are now contracting for the installation and/or monitoring of your electronic security system is not an employee or agent of ADT Security Services, Inc. Upon
finalization of your contract, it will be submitted to ADT Security Services, Inc. for approval and purchase of the monitoring of your system. You are hereby advised
that ADT Security Services, Inc. reserves the right to reject or otherwise not purchase this contract. If this contract is tendered and rejected or otherwise not
purchased, ADT Security Services, Inc. will promptly notify you of that decision so that you may make other arrangements if you so choose.

**THE ENTIRE CONTRACT BETWEEN THE PARTIES CONSISTS OF THIS CONTRACT AND ALL APPLICABLE ATTACHMENTS WHICH TOGETHER SUPERCEDE
ANY AND ALL OTHER AGREEMENTS, UNDERSTANDINGS, ADVERTISEMENTS, OR REPRESENTATIONS IN CONNECTION WITH THE SERVICES TO BE
PROVIDED HEREIN.**

**YOU ACKNOWLEDGE AND ADMIT THAT BEFORE SIGNING YOU HAVE READ THE FRONT AND BACK OF THIS PAGE IN ADDITION TO THE ATTACHMENTS
WHICH CONTAIN IMPORTANT TERMS AND CONDITIONS FOR THIS CONTRACT. YOU STATE THAT YOU UNDERSTAND ALL THE TERMS AND CONDITIONS
OF THIS CONTRACT, INCLUDING, BUT NOT LIMITED TO, PARAGRAPHS 5, 6, 7, 8, 9; 10, AND 21.YOU ARE AWARE OF THE FOLLOWING: NO ALARM
SYSTEM CAN GUARANTEE PREVENTION OF LOSS; HUMAN ERROR IS ALWAYS POSSIBLE; WE MAY NOT RECEIVE ALARM SIGNALS IF THE TELEPHONE
LINE OR OTHER ALARM TRANSMISSION SYSTEM IS CUT, INTERFERED WITH, OR OTHERWISE DAMAGED OR IF TELEPHONE OR ELECTRICAL SERVICE IS
UNAVAILABLE FOR ANY REASON. A SECOND SHEET ACCOMPANIES THIS SHEET WITH ADDITIONAL TERMS AND CONDITIONS.**

**This Contract requires written approval by an Authorized Representative of Dealer. Without such written approval, Dealer's only liability shall be to refund any
amount customer paid Dealer upon signing this Contract. Dealer has no responsibility for monitoring services until all permits required by law are received.**

**CANCELLATION RIGHT (Residential Customer only)**
**YOU, THE CUSTOMER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS
DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN
EXPLANATION OF THIS RIGHT.** Customer acknowledges being verbally informed of Customer's right to cancel at the time
of execution of this Contract and receipt of this Notice. INITIAL _____

Accepted By:
X _____
Sales Representative Signature

Accepted and Copy Received by:
WALSH

X _____
Customer's Signature

Accepted By:
X _____
Authorized Representative of Dealer



IMPORTANT TERMS AND CONDITIONS
TABLE OF CONTENTS

1. Payments and Consumer Report
2. Your Early Termination
3. Increases in Charges
4. Additional Charges and Offset Rights
5. We Are Not an Insurer
6. No Liability; Limited Liability
7. Exclusive Damages Remedy
8. Hold Harmless
9. Other Party's Limitation
10. Time to File Lawsuit or Other Action
11. Installation
12. Limited Warranty
13. Extended Limited Warranty (QSP)
14. Warranty Exclusions
15. No Other Warranties
16. Repairs and Parts Replacements
17. Alarm Monitoring and Notification Service
18. Familiarization Period
19. Failure to Pay Charges or Honor Contract
20. Smoke Detector and Other Warnings
21. Communication Facilities
22. Cancellation
23. Assignment
24. Delays
25. Electronic Media; Personal Information
26. Medical
27. Testing
28. Third Party Installations
29. Notices and General Legal Matters
30. Inspection Service
31. Investigator Response Service
32. Entire Agreement
33. License Information

1. PAYMENTS AND CONSUMER REPORT. A. All charges are payable in advance. B. You authorize us to obtain a NON-INVESTIGATIVE CONSUMER REPORT about you from a consumer reporting agency at any time during the term. By your authorized signature, you authorize us or any of our representatives, employees, or assignees to request and obtain credit history from a credit bureau or other agency and that said credit bureau or other agency has your permission to release credit information to us, our assignees, representatives or employees. C. We reserve the right to charge you for incidental costs relating to each of the Services chosen by you during the initial term and renewal term.

2. YOUR EARLY TERMINATION OF THIS CONTRACT. YOU AGREE THAT THE CHARGES DUE UNDER THIS CONTRACT ARE BASED ON YOUR AGREEMENT TO RECEIVE AND TO PAY FOR THE SERVICES FOR THREE (3) FULL YEARS. ACCORDINGLY, YOU AGREE THAT: IF YOU TERMINATE THIS CONTRACT DURING ITS INITIAL TERM, YOU WILL PAY US AN AMOUNT EQUAL TO 75% OF THE CHARGES TO BE PAID BY YOU DURING THE REMAINING INITIAL THREE (3) YEAR TERM OF THIS CONTRACT. NO CONTRACT TERMINATION CHARGES ARE DUE IF YOU TERMINATE DURING THE THIRTY (30) DAY RENEWAL PERIOD(S). IF THIS IS A "COMMERCIAL" CONTRACT, AND YOU TERMINATE THIS CONTRACT DURING ITS INITIAL TERM OR DURING A RENEWAL TERM, YOU WILL PAY US AN AMOUNT EQUAL TO 75% OF THE CHARGES TO BE PAID BY YOU DURING THE REMAINING INITIAL TERM OR REMAINING RENEWAL TERM OF THIS CONTRACT. THIS AMOUNT IS A CONTRACT TERMINATION CHARGE AND IS NOT A PENALTY.

3. INCREASES IN CHARGES. We have the right to increase the annual service charge at any time after the first year. If you give us written objection to the increase within thirty (30) days of your receipt of notice of the increase, and if we do not waive the increase, then you may terminate this Contract effective thirty (30) days after our receipt of your written notice of termination. In this situation, you will not have to pay the early termination charges described in Paragraph 2.

4. ADDITIONAL CHARGES AND OFFSET RIGHTS. You agree to pay all directly or indirectly imposed false alarm assessments, taxes, fees or other charges of any police or fire department, or any other governmental body. You agree to pay all construction/alarm use permit fees, our administrative permit processing fee and all telephone or signal transmission company charges for area code, telephone numbering or other changes. You agree to pay us to reprogram the system if necessary to comply with any area code, telephone numbering or other changes. You agree to pay us to any increases in our cost for facilities used for transmitting alarm signals under this Contract. You agree to pay a service charge if our representative responds to a service call or alarm at your premises because you improperly followed operating instructions, failed to properly lock or close a window, door or other protected point or improperly adjusted CCTV cameras, monitors or accessories. Upon the early termination or the expiration of this Contract, you agree that we have the right to offset against any amounts or credits that we might owe to you (a) service charges for thirty (30) days, if the required written termination notice set forth in the Term of Contract paragraph above is not provided by you, (b) the contract termination charges set forth in paragraph 2 above, and (c) any other additional charges, amounts or deposits that you owe to us. If the amount of the offset equals or exceeds the amount that we owe to you or if we owe you a credit of five dollars ($5.00) or less, you agree that we will not be obligated to refund any amounts to you and you waive your right to receive this refund amount.

5. WE ARE NOT AN INSURER. WE ARE NOT AN INSURER AND YOU WILL OBTAIN FROM AN INSURER ANY INSURANCE YOU DESIRE. THE AMOUNT YOU PAY US IS BASED UPON THE SERVICES WE PERFORM AND THE LIMITED LIABILITY WE ASSUME UNDER THIS CONTRACT AND IS UNRELATED TO THE VALUE OF YOUR PROPERTY OR THE PROPERTY OF OTHERS LOCATED IN YOUR PREMISES. IN THE EVENT OF ANY LOSS OR INJURY TO ANY PERSON OR PROPERTY, YOU AGREE TO LOOK EXCLUSIVELY TO YOUR INSURER TO RECOVER DAMAGES. YOU WAIVE ALL SUBROGATION AND OTHER RIGHTS OF RECOVERY AGAINST US THAT ANY INSURER OR OTHER PERSON MAY HAVE AS A RESULT OF PAYING ANY CLAIM FOR LOSS OR INJURY TO ANY OTHER PERSON.

6. NO LIABILITY; LIMITED LIABILITY. IT WILL BE EXTREMELY DIFFICULT TO DETERMINE THE ACTUAL DAMAGES THAT MAY RESULT FROM OUR FAILURE TO PERFORM OUR DUTIES UNDER THIS CONTRACT. YOU AGREE THAT WE AND OUR ASSIGNEES, AGENTS, EMPLOYEES, SUBSIDIARIES, AFFILIATES AND PARENT COMPANIES ARE EXEMPT FROM LIABILITY FOR ANY LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE ARISING DIRECTLY OR INDIRECTLY FROM THE SERVICES (INCLUDING INTERNET/WEBSITE SERVICES) WE PERFORM OR THE SYSTEMS WE PROVIDE UNDER THIS CONTRACT. IF IT IS DETERMINED THAT WE OR ANY OF OUR ASSIGNEES, AGENTS, EMPLOYEES, SUBSIDIARIES, AFFILIATES OR PARENT COMPANIES ARE DIRECTLY OR INDIRECTLY RESPONSIBLE FOR ANY SUCH LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE, YOU AGREE THAT DAMAGES SHALL BE LIMITED TO THE GREATER OF $500 OR 10% OF THE ANNUAL SERVICE CHARGE YOU PAY UNDER THIS CONTRACT. THESE AGREED UPON DAMAGES ARE NOT A PENALTY. THEY ARE YOUR SOLE REMEDY NO MATTER HOW THE LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE IS CAUSED, EVEN IF CAUSED BY OUR NEGLIGENCE, GROSS NEGLIGENCE, FAILURE TO PERFORM DUTIES UNDER THIS CONTRACT, STRICT LIABILITY, FAILURE TO COMPLY WITH ANY APPLICABLE LAW, OR OTHER FAULT. AT YOUR REQUEST, WE MAY ASSUME ADDITIONAL LIABILITY BY ATTACHING AN AMENDMENT TO THIS CONTRACT STATING THE EXTENT OF OUR ADDITIONAL LIABILITY AND THE ADDITIONAL COST TO YOU. YOU AGREE THAT WE ARE NOT AN INSURER EVEN IF WE ENTER INTO SUCH AMENDMENT.

7. EXCLUSIVE DAMAGES REMEDY. YOUR EXCLUSIVE DAMAGE AND LIABILITY REMEDIES ARE SET FORTH IN PARAGRAPH 6 ABOVE. WE ARE NOT LIABLE TO YOU OR ANY OTHER PERSON FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES.

8. HOLD HARMLESS. IN THE EVENT ANY LAWSUIT OR OTHER CLAIM IS FILED BY ANY OTHER PARTY AGAINST US OR OUR ASSIGNEES, AGENTS, EMPLOYEES, SUBSIDIARIES, AFFILIATES OR PARENT COMPANIES ARISING OUT OF THE SERVICES WE PERFORM OR THE SYSTEMS WE PROVIDE UNDER THIS CONTRACT, YOU AGREE TO BE SOLELY RESPONSIBLE FOR, AND TO INDEMNIFY AND HOLD US COMPLETELY HARMLESS FROM, SUCH LAWSUIT OR OTHER CLAIM INCLUDING YOUR PAYMENT OF ALL DAMAGES, EXPENSES, COSTS AND ATTORNEYS' FEES. THESE OBLIGATIONS WILL SURVIVE THE EXPIRATION OR EARLIER TERMINATION OF THIS CONTRACT. THESE OBLIGATIONS WILL APPLY EVEN IF SUCH LAWSUIT OR OTHER CLAIM ARISES OUT OF OUR NEGLIGENCE, GROSS NEGLIGENCE, FAILURE TO PERFORM DUTIES UNDER THIS CONTRACT, STRICT LIABILITY, FAILURE TO COMPLY WITH ANY APPLICABLE LAW, OR OTHER FAULT.

9. OTHER PARTY'S LIMITATION. IF YOU PURCHASED OUR SERVICES OR SYSTEMS THROUGH ANOTHER BUSINESS OR PERSON, OR FROM US THROUGH A REFERRAL FROM ANOTHER BUSINESS OR PERSON, YOU AGREE THAT SUCH OTHER BUSINESS OR PERSON ACTS SOLELY AS AN INDEPENDENT CONTRACTOR. SUCH BUSINESS OR PERSON SHALL HAVE NO RESPONSIBILITY OR LIABILITY TO YOU FOR THE PERFORMANCE OR NONPERFORMANCE OF THE SYSTEM OR SERVICES WE PROVIDE UNDER THIS CONTRACT. WITHOUT LIMITING THE ABOVE, YOU AGREE THAT THE LIABILITY OF SUCH OTHER BUSINESS OR PERSON IS, IN ANY EVENT, LIMITED IN ACCORDANCE WITH THE PROVISIONS OF THIS CONTRACT, INCLUDING BUT NOT LIMITED TO PARAGRAPHS 5, 6, 7, 8, 9 AND 10. YOU AGREE THAT SUCH BUSINESS OR PERSON AND ITS ASSIGNEES, AGENTS, EMPLOYEES, SUBSIDIARIES, AFFILIATES AND PARENT COMPANIES MAY INVOKE ALL OF OUR RIGHTS UNDER THESE PARAGRAPHS.

10. TIME TO FILE LAWSUIT OR OTHER ACTION. YOU AGREE TO FILE ANY LAWSUIT OR OTHER ACTION YOU MAY HAVE AGAINST US OR OUR ASSIGNEES, AGENTS, EMPLOYEES, SUBSIDIARIES, AFFILIATES OR PARENT COMPANIES WITHIN ONE (1) YEAR FROM THE DATE OF THE EVENT THAT RESULTED IN THE LOSS, INJURY, DAMAGE OR LIABILITY OR THE SHORTEST DURATION PERMITTED UNDER APPLICABLE LAW IF SUCH PERIOD IS GREATER THAN ONE (1) YEAR.

11. INSTALLATION. We will install the equipment listed on the Schedule of Protection attached to this Contract in a workmanlike manner under the following conditions: A. Your premises will be available without interruption during our normal working hours; B. You understand that the installation will require drilling into various parts of your premises; C. You will provide us with 110 AC electrical outlets for our power equipment in locations designated by us; D. You will make arrangements for lifting and replacing carpeting, if required, for our installation of floor mats or wiring; E. You warrant that you (1) requested the equipment and services specified in this Contract for your own use and not for the benefit of any other party, (2) own the premises where the equipment is being installed or that you have the authority to authorize us to install such equipment in the premises, and (3) will comply with all laws, codes and regulations pertaining to the equipment we install and the services we provide under this Contract and our intent is to conceal wiring in the finished areas of your premises. However, there may be areas where we determine, in our sole discretion, it is impractical to conceal the wiring. In such areas, wiring will be exposed. We shall not be liable for loss for water intrusion, mold, fungi, wet or dry rot or bacteria. The yard signs and window stickers shall remain the property of and may be removed by Dealer or its assignee. Your right to display them on your property during the term of this Contract is not transferable.

12. LIMITED WARRANTY. During the first three (3) months after installation, we will repair or, at our option, replace any defective part of the system, including wiring and batteries, and will make any needed mechanical adjustments, all at no charge to you. We will use new or functionally operative parts for replacements. This limited warranty is for your benefit only, and may not be enforced by any other person. This limited warranty gives you specific legal rights. The laws of the state where this Contract was signed may also give you additional rights. For service call 800-662-5378.

13. EXTENDED LIMITED WARRANTY (Quality Service Plan). If you purchased our Extended Limited Warranty, we will repair or, at our option, replace any part of the System, including batteries, requiring such repair or replacement due to ordinary wear and tear or malfunction of the System but not due to an excluded condition below. We will also provide a labor rate discount, at the then current labor rate discount rate, for each service call for an excluded condition below. We will use new or functionally operative parts for replacements. The Extended Limited Warranty and the billing for it will commence as of the date the System is installed, operational, and the necessary communications connection is completed and will continue for the term of this Contract, except, you will after the three (3) month Limited Warranty Period, be charged a $25 trip charge for each service call during the Extended Limited Warranty Period. The Extended Limited Warranty will automatically renew for successive thirty (30) day terms at our then-current Extended Limited Warranty rate unless terminated by either parties written notice at least thirty (30) days before the end of the then-current term. If you purchase the Extended Limited Warranty after the initial system installation, your system must be in good working condition at the time of the Extended Limited Warranty purchase. To purchase Extended Limited Warranty call 800-662-5378. In the event that you did not enter into an agreement with us to provide Extended Limited Warranty services, charges for repair services will be billed to you based upon our service rates in effect at the time of the repair service is rendered. Such service rates are subject to change without notice. You acknowledge that it is your responsibility to make and pay for all repairs and replacements should any part of the Equipment be damaged by lightning, electrical surges, or other acts of God, fire, riot, war, terrorism, negligence, vandalism, or any external cause.

## ATTACHMENT TO ALARM SERVICES CONTRACT
### Important Terms and Conditions (continued)

**14. WARRANTY EXCLUSIONS.** We perform warranty services only during our normal working hours. IF YOU REQUEST US TO PERFORM WARRANTY SERVICES OUTSIDE OUR NORMAL WORKING HOURS, YOU WILL BE REQUIRED TO PAY US FOR THE SERVICES AT OUR THEN APPLICABLE RATES FOR LABOR AND PARTS. THE LIMITED WARRANTY AND, IF PURCHASED, THE EXTENDED LIMITED WARRANTY DO NOT APPLY IF WE DETERMINE UPON INSPECTION THAT ANY OF THE FOLLOWING CONDITIONS CAUSED THE NEED FOR SERVICE: A. Damage resulting from accidents, theft, Acts of God, natural disasters, labor disputes, terrorism, civil strife, electrical surges, alterations or misuse; B. You fail to properly close or secure a door, window or other point protected by an alarm device; C. You fail to properly follow the operating instructions; D. Trouble in a telephone line, use of non-traditional telephone line or service (including but not limited to DSL, ADSL, VOIP, etc.) or due to interruption of power. E. Repairs needed to electrical wiring, security screens, exterior mounted devices or PROM (Programmable Read Only Memory); F. Ordinary maintenance or wear and tear (not excluded at to Extended Limited Warranty/Quality Service Plan (QSP)); G. Alterations to your premises; or H. Alterations to the system made at your request, or made necessary by a change to your premises, damage to your premises or the alarm system, or for any other cause beyond our control. If you purchased our Extended Limited Warranty (QSP) we will provide a labor rate discount, at our then current labor rate discount, for each service call for an excluded condition, above. We will not perform warranty services on any device not installed by us. You must furnish the necessary electrical power through your meter at your expense to obtain warranty services. I. If you fail to test the Equipment at least monthly, we will not be responsible for any warranties or services provided under this Contract. Our obligation to provide replacement or repair service under this Contract shall be conditioned upon the continued availability of the original part or component from the original manufacturer.

**15. NO OTHER WARRANTIES.** OTHER THAN THE LIMITED WARRANTY AND, IF PURCHASED, THE EXTENDED LIMITED WARRANTY, WE MAKE NO GUARANTY OR WARRANTY OF ANY KIND, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE SERVICES WE PERFORM OR THE SYSTEMS WE PROVIDE UNDER THIS CONTRACT. YOUR EXCLUSIVE WARRANTY REMEDY IS SET FORTH ABOVE. WE ARE NOT LIABLE TO YOU OR ANY OTHER PERSON FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES. SOME STATES MAY NOT ALLOW US TO LIMIT THE LENGTH OF AN IMPLIED WARRANTY OR TO EXCLUDE OR LIMIT INCIDENTAL OR CONSEQUENTIAL DAMAGES. THE LAWS OF THE STATE WHERE THIS CONTRACT WAS SIGNED WILL DETERMINE WHETHER THESE LIMITATIONS AND EXCLUSIONS APPLY.

**16. REPAIRS AND PARTS REPLACEMENT.** At your request we will repair or replace the equipment we provided at our then-prevailing prices after the Limited Warranty and, if purchased, the Extended Limited Warranty expire. At your request we will also repair or replace anything excluded from the Limited Warranty and Extended Limited Warranty at our then-prevailing prices.

**17. ALARM MONITORING AND NOTIFICATION SERVICE.** We will provide alarm monitoring and notification services and investigator response services if the first page of this Contract includes a charge for such services. If you have elected for us to provide alarm service that requires Police Response, Fire Department Response, Investigator Response, Medical Emergency Notification or Two Way Voice monitoring and notification, when such an alarm is received at our alarm monitoring center, we may, at our sole discretion, attempt to contact you and/or anyone on your Emergency Information Schedule by telephone. Two Way Voice to confirm that the alarm is not false. If we fail to contact you and/or someone on your Emergency Information Schedule, or if we question the response we receive upon such contact, we will attempt to notify the appropriate police department or fire department, or if investigator response service is being furnished, we will for an alarm that requires police response, endeavor to dispatch a representative to make an investigation of the exterior of the premises from his vehicle and, upon evidence of an attack, we will attempt to notify the appropriate police department. You agree that we shall have no liability pertaining to any Two Way Voice communications or Internet Video recordings or their publication. If you have elected for us to provide Supervisory Alarm or Trouble Alarm monitoring services (or if such services are actively programmed into your system) and such an alarm is received at our alarm monitoring center, we will attempt to notify the representative you designate. If you have elected for us to provide Medical Emergency Notification Services you agree that the very nature of Medical Emergency Notification Services, irrespective of any delays, involves uncertainty, risk and possible serious injury, disability or death, for which we should not under any circumstances be held responsible or liable; that the equipment furnished for Medical Emergency Notification Services is not foolproof and may experience signal transmission failures or delays for any number of reasons, whether or not our fault or under our control; that the actual time required for medical emergency providers to arrive at your premises and/or to transport any person requiring medical attention is unpredictable and that many contributing factors, including but not limited to such things as telephone network operation, distance, weather, road and traffic conditions, alarm equipment function and human factors, both with responding authorities and with us, may affect medical emergency response; and that our performance of, delay in performance of or failure to perform Medical Emergency Notification Services under the Agreement, and all of the transactions, occurrences, consequences, and rights and obligations of the parties relating directly or indirectly to Medical Emergency Notification Services shall in all events be subject to and controlled by Paragraphs 5, 6, 7, 8, 9 and 10. The person(s) identified on your Emergency Information Schedule are authorized to act on your behalf and the checked box person are authorized to cancel an alarm prior to notification of authorities. You understand that the equipment we provide may not operate with other companies' alarm monitoring equipment. This may prevent you from using such equipment in the event you terminate our services. You understand that local laws, ordinances or policies may restrict our ability to provide the alarm monitoring and notification services described in this Contract and/or necessitate modified or additional services and related charges to you. You understand that we may employ a number of industry-recognized measures to help reduce occurrences of false alarm signal activations. These measures include, but are not limited to, implementation of industry-recognized default settings on alarm panels authorized under ANSI-SIA CP-01-2000, default settings for "swinger shutdown" of specific alarm zones; implementation of "partial clear time bypass" procedures at our alarm monitoring center and other similar measures at our sole discretion from time to time. THESE MEASURES CAN RESULT IN NO ALARM SIGNAL BEING SENT FROM AN ALARM ZONE IN YOUR PREMISES AFTER THE INITIAL ALARM ACTIVATION UNTIL YOU MANUALLY RESET YOUR ALARM SYSTEM. You understand that, upon receiving notification that a fire or carbon monoxide signal has been received by us, the police, fire department or other responding authority may forcibly enter your residence. WE WILL NOT ARREST OR DETAIN ANY PERSON. Cellular radio unit test supervision, if provided under this Contract, provides only the status if the cellular radio unit's current signaling ability at the time of the test communication based on certain programmed intervals and does not serve to detect the potential loss of radio service at the time of an actual emergency event. You acknowledge that if the phone service is disconnected in any manner whatsoever, or not working for any reason, alarm signals cannot be transmitted to a central station or to an outside monitoring facility, if applicable. You acknowledge that additional protection was made available to you and declined. We reserve the right to employ outside monitoring facilities and guard response services. You acknowledge that this Contract, particularly those paragraphs relating to disclaimers of warranties, limitation of liability, liquidated damages and indemnification, inure to the benefit of and are applicable to any outside monitoring facilities and guard response services employed by us, as well as ourselves, and that they bind you with respect to the monitoring facility and/or guard response service in the same manner and with the same force and effect that they bind you to us. Monitoring Services are initiated upon activation of the Equipment, receipt of satisfactory signals sent by the central station, and receipt of all necessary fire and police permits from you. We may have the ability to program the equipment from our facilities and you acknowledge that changes in the programming of the Equipment may be made upon request by you, upon default and/or termination of the Monitoring Services, or at our discretion if required to provide Monitoring Services.

**18. FAMILIARIZATION PERIOD. UNLESS YOU HAVE REJECTED THE FAMILIARIZATION PERIOD BY INITIALING THE APPROPRIATE LINE ON THE FIRST PAGE OF THIS CONTRACT (EXCEPT WHERE FAMILIARIZATION IS REQUIRED BY LAW), YOU AGREE THAT DURING A SEVEN (7) DAY FAMILIARIZATION PERIOD FOLLOWING COMPLETION OF THE INSTALLATION (AND DURING ANY APPLICABLE EXTENSIONS) WE HAVE NO OBLIGATION TO, AND WILL NOT, RESPOND TO ANY ALARM SIGNAL FROM YOUR PREMISES THAT IS RECEIVED AT OUR ALARM MONITORING CENTER. YOU ALSO AGREE THAT DURING SUCH PERIOD WE HAVE NO OBLIGATION TO, AND WILL NOT, NOTIFY ANY AUTHORITIES, YOU OR YOUR DESIGNATED REPRESENTATIVE, OR TAKE ANY OTHER ACTION WITH REGARD TO ANY ALARM SIGNAL WE RECEIVE, IF DUE TO AN ACTUAL EMERGENCY EVENT.**

**19. FAILURE TO PAY CHARGES OR HONOR CONTRACT.** If you fail to make any payment when due or fail to honor any other term or condition of this Contract, we may stop providing the alarm monitoring and notification services and reprogram or disable the equipment with or without notice. You agree that you will grant us access to your residence to allow us to reprogram or disable the equipment. You agree that we have no liability to you if we providing the alarm monitoring and notification services and reprogram or disable the equipment. You agree that we are not required to redecorate or repair your premises. We do not waive our right to any other legal remedy, including our right to charge you a late fee at the highest legal amount for each month that a payment is not received or interest at the highest legal rate on the unpaid amount, by stopping to provide the monitoring and notification services or reprogramming or disabling the equipment.

**20. SMOKE DETECTOR AND OTHER WARNINGS.** Our electrical smoke detectors are designed to be connected to an electrical power source. THESE SMOKE DETECTORS WILL NOT OPERATE, THE ALARM WILL NOT SOUND, AND THE ALARM SIGNAL WILL NOT BE TRANSMITTED, IF THE ELECTRICITY IS CUT OFF AND THE BACKUP BATTERY, IF PART OF THE SYSTEM, IS LOW OR DEAD. If there is any fire, the electricity may cut off before the alarm can function and the alarm will not sound, and the alarm signal will not be transmitted. Connecting these smoke detectors to a separate dedicated electrical circuit increases their reliability. However, even dedicated circuits can fail. WE RECOMMEND THAT YOU INSTALL A BATTERY POWERED SMOKE DETECTOR AS A BACKUP SYSTEM. YOU SHOULD REGULARLY INSPECT THE SMOKE DETECTORS FOR DIRT AND DUST BUILD-UP AND TEST THEM WEEKLY TO MAINTAIN CONTINUED OPERATION. Smoke detectors can significantly help to reduce loss, injury and death. However, no matter how good any detection device is, nothing works perfectly under every circumstance. WE WARN YOU THAT A SMOKE DETECTOR WILL NOT ENSURE THAT YOU WILL NEVER SUFFER DAMAGE OR INJURY. Our battery-powered motion detectors, smoke detectors, door and window contact transmitters, and other detection sensors, if installed under this Contract, are not connected to the electrical system of your premises. Such detection sensors require batteries to operate. THESE BATTERY POWERED DETECTION SENSORS WILL NOT OPERATE, AND THE ALARM WILL NOT SOUND, IF THE BATTERIES ARE LOW OR DEAD. You are responsible for maintaining the batteries. That should regularly inspect such sensors for dirt and dust buildup and test them weekly to help maintain continued operation. WE STRONGLY RECOMMEND THAT YOU CAREFULLY READ THE OWNER'S MANUAL FOR ALL EQUIPMENT. THE OWNER'S MANUAL CONTAINS VERY IMPORTANT INFORMATION SUCH AS OPERATING INSTRUCTIONS AND EQUIPMENT TESTING AND MAINTENANCE PROCEDURES. YOU SHOULD ALSO READ ALL INSTRUCTIONS, WARNINGS AND OTHER INFORMATION ON THE EQUIPMENT ITSELF.

**21. COMMUNICATION FACILITIES. A. AUTHORIZATION.** You authorize us, on your behalf, to request services, orders or equipment from a telephone company, wireless carrier or other company providing communication facilities, signal transmission services or facilities under this Contract (referred to as "Telephone Company"). **B. DIGITAL COMMUNICATOR.** You understand that a digital communicator, if installed under this Contract, uses traditional telephone lines for sending signals which eliminates the need for a dedicated telephone line and the costs associated with such dedicated lines. **C. DERIVED LOCAL CHANNEL.** The Telephone Company's services provided to you in connection with our services may include Derived Local Channel service. Such service may be provided under the Telephone Company's service marks or service names. These services include providing lines, signal paths, scanning and transmission. You agree that the Telephone Company's liability is limited to the same extent our liability is limited in Paragraphs 5, 6, 7, 8, 9 and 10 of this Contract. D. YOU UNDERSTAND THAT WE WILL NOT RECEIVE ALARM SIGNALS WHEN THE TELEPHONE LINE OR OTHER ALARM SYSTEM IS NOT OPERATING OR HAS BEEN CUT, INTERFERED WITH OR IS OTHERWISE DAMAGED OR IF THE ALARM SYSTEM IS UNABLE TO ACQUIRE, TRANSMIT OR MAINTAIN AN ALARM SIGNAL OVER YOUR TELEPHONE SERVICE FOR ANY REASON INCLUDING NETWORK OUTAGE OR OTHER NETWORK PROBLEMS SUCH AS CONGESTION OR DOWNTIME, ROUTING PROBLEMS, OR INABILITY OF THE ALARM SIGNAL TO ACQUIRE, UTILIZE, OR RELY ON DIGITAL QUALITY. YOU UNDERSTAND THAT OTHER POTENTIAL CAUSES OF SUCH A FAILURE OVER CERTAIN TELEPHONE SERVICES (INCLUDING BUT NOT LIMITED TO SOME TYPES OF DSL, ADSL, VOIP, DIGITAL PHONE, INTERNET PROTOCOL-BASED PHONE OR OTHER INTERNET INTERFACE-TYPE SERVICE OR RADIO SERVICE, INCLUDING CELLULAR OR PRIVATE RADIO, ETC. ("NON-TRADITIONAL TELEPHONE SERVICE") OR OVER COMMERCIAL CUSTOMER'S OWN PROPRIETARY TELECOMMUNICATION NETWORK, OR OTHER THIRD-PARTY EQUIPMENT OR VOICE/DATA TRANSMISSION NETWORKS OR SYSTEMS OWNED, MAINTAINED OR SERVICED BY CUSTOMER OR THIRD PARTIES) INCLUDE BUT ARE NOT LIMITED TO: (1) LOSS OF NORMAL ELECTRIC POWER TO YOUR PREMISES (THE BATTERY BACK-UP FOR DEALER'S ALARM PANEL DOES NOT POWER YOUR TELEPHONE SERVICE), AND (2) ELECTRONICS FAILURES SUCH AS A MODEM MALFUNCTION. YOU UNDERSTAND THAT DEALER WILL ONLY REVIEW THE INITIAL COMPATIBILITY OF YOUR DEALER ALARM SYSTEM WITH YOUR NON-TRADITIONAL TELEPHONE SERVICE AT THE TIME OF INITIAL INSTALLATION AND THAT CHANGES IN YOUR TELEPHONE SERVICE'S DATA FORMAT AFTER DEALER'S INITIAL REVIEW OF COMPATIBILITY COULD MAKE YOUR TELEPHONE SERVICE UNABLE TO TRANSMIT ALARM SIGNALS TO DEALER'S MONITORING CENTERS. IF DEALER DETERMINES IN ITS SOLE DISCRETION THAT IT IS COMPATIBLE, DEALER WILL PERMIT YOU TO USE YOUR NON-TRADITIONAL TELEPHONE SERVICE AS THE SOLE METHOD OF TRANSMITTING ALARM SIGNALS, ALTHOUGH YOU UNDERSTAND THAT DEALER RECOMMENDS THAT YOU ALSO USE AN ADDITIONAL BACK-UP METHOD OF COMMUNICATION TO CONNECT YOUR ALARM SYSTEM TO DEALER'S ALARM MONITORING CENTER REGARDLESS OF THE TYPE OF TELEPHONE SERVICE YOU USE. YOU ALSO UNDERSTAND THAT IF DEALER DETERMINES IN ITS SOLE DISCRETION THAT YOUR

ATTACHMENT TO ALARM SERVICES CONTRACT
Important Terms and Conditions (continued)

NON-TRADITIONAL TELEPHONE SERVICE IS OR LATER BECOMES NON-COMPATIBLE, OR IF YOU CHANGE TO ANOTHER NON-TRADITIONAL TELEPHONE SERVICE THAT IS NOT COMPATIBLE, THEN DEALER REQUIRES THAT YOU USE AN ALTERNATE METHOD OF COMMUNICATION ACCEPTABLE TO DEALER AS THE PRIMARY METHOD TO CONNECT YOUR ALARM SYSTEM TO DEALER'S ALARM MONITORING CENTER. YOU UNDERSTAND THAT TRANSMISSION OF FIRE ALARM SIGNALS BY MEANS OTHER THAN A TRADITIONAL TELEPHONE LINE MAY NOT BE IN COMPLIANCE WITH NATIONAL HOUSEHOLD FIRE ALARM STANDARDS OR SOME LOCAL FIRE CODES, AND THAT IT IS YOUR OBLIGATION TO COMPLY WITH SUCH STANDARDS AND CODES. YOU ALSO UNDERSTAND THAT IF YOUR ALARM SYSTEM HAS A LINE CUT FEATURE, IT MAY NOT BE ABLE TO DETECT IF YOUR NON-TRADITIONAL TELEPHONE SERVICE LINE IS CUT OR INTERRUPTED, AND THAT DEALER MAY NOT BE ABLE TO DOWNLOAD SYSTEM CHANGES OR PROVIDE CERTAIN AUXILIARY MONITORING SERVICES THROUGH A NON-TRADITIONAL TELEPHONE SERVICE. YOU FURTHER UNDERSTAND THAT YOUR ALARM PANEL MAY BE UNABLE TO SEIZE YOUR PHONE LINE TO TRANSMIT AN ALARM SIGNAL IF ANOTHER CONNECTION IS OFF THE HOOK DUE TO IMPROPER CONNECTION OR OTHERWISE. DEALER WILL NOT PROVIDE FIRE OR SMOKE ALARM MONITORING OR UL CERTIFIED SYSTEMS MONITORING TO COMMERCIAL CUSTOMERS BY MEANS OTHER THAN A TRADITIONAL TELEPHONE LINE AND COMMERCIAL CUSTOMER UNDERSTANDS THAT IT IS SOLELY RESPONSIBLE FOR ASSURING THAT IT USES TRADITIONAL TELEPHONE SERVICE FOR ANY SUCH MONITORING. COMMERCIAL CUSTOMER ACKNOWLEDGES THAT ANY DECISION BY IT TO USE NON-TRADITIONAL TELEPHONE SERVICE AS THE METHOD FOR TRANSMITTING ALARM SIGNALS IS BASED ON COMMERCIAL CUSTOMER'S OWN INDEPENDENT BUSINESS JUDGMENT AND THAT ANY SUCH DECISION IS MADE WITHOUT ANY ASSISTANCE, INVOLVEMENT, INPUT, RECOMMENDATION, OR ENDORSEMENT ON THE PART OF DEALER. COMMERCIAL CUSTOMER ASSUMES SOLE AND COMPLETE RESPONSIBILITY FOR ESTABLISHING AND MAINTAINING ACCESS TO AND USE OF THE NON-TRADITIONAL TELEPHONE SERVICE FOR CONNECTION TO THE ALARM MONITORING EQUIPMENT.

22. CANCELLATION. We may, at any time, cancel this Contract at our option if: A. Our alarm monitoring center is destroyed or damaged so that it is impractical for us to continue service; B. We cannot acquire or retain the transmission connections or authorization to transmit signals between your premises and our alarm monitoring center or the applicable fire or police department or other agency, or between our alarm monitoring center and the applicable fire or police department or other agency; C. You fail to follow our recommendations to repair or replace any defective parts of the system not covered under the Limited Warranty or Extended Limited Warranty, if purchased; D. You fail to follow our operating instructions for the system; or E. We determine that it is impractical to continue service due to the modification or alteration of your premises after installation. If we cancel for any of the reasons stated immediately above, we will refund any advance payments made for services to be supplied after the date of such termination, less any amounts still due for the installation of the equipment, for services already rendered, and for any other charges due, but we will be liable for damages or subject to penalty as a result of such termination. We may cancel this Contract with or without notice at our option if: A. You fail to pay any monies when due under this Contract; B. You fail to comply with any other term or condition of this Contract; C. You fail to maintain your premises in a safe and sanitary condition; or D. You change to a telephone/communications service incompatible with alarm signal transmission . If we cancel for any of the reasons stated immediately above, we will not be liable for damages or subject to penalty as a result of such termination. In the event of a default and/or termination of the Contract, we have the right under this Contract to reprogram or disconnect your Equipment so that it no longer communicates with the central station, without notice to you. In the event that we must make a service call to the Monitored Location to terminate the transmission of signals to our central station, you shall pay $50 to us as a disconnect fee. In the event you do not permit us to reprogram or disconnect the Equipment so that it no longer communicates with our central station, you will be responsible for the Monitoring Services charges under the Contract as long as the Equipment is sending signals to our central station.

23. ASSIGNMENT. THIS CONTRACT IS NOT ASSIGNABLE BY YOU EXCEPT UPON OUR PRIOR WRITTEN CONSENT. WE SHALL HAVE THE RIGHT TO ASSIGN THIS CONTRACT TO ANY OTHER PERSON, FIRM, OR CORPORATION WITHOUT NOTICE TO YOU. WE SHALL HAVE THE FURTHER RIGHT TO SUBCONTRACT ANY INSTALLATION AND/OR SERVICES, WITHOUT NOTICE TO YOU, INCLUDING BUT NOT LIMITED TO, MONITORING SERVICES AND/ OR LIMITED WARRANTY/EXTENDED LIMITED WARRANTY SERVICES WITH WHICH WE MAY PERFORM. YOU ACKNOWLEDGE THAT THIS CONTRACT AND PARTICULARLY THOSE PARAGRAPHS RELATING TO OUR LIMITED LIABILITY, DISCLAIMER OF WARRANTIES, AND THIRD PARTY INDEMNIFICATION INURE TO THE BENEFIT OF AND ARE APPLICABLE TO ANY ASSIGNEES AND/OR SUBCONTRACTORS WITH THE SAME FORCE AND EFFECT AS THEY BIND YOU TO US. YOU FURTHER ACKNOWLEDGE THAT AN ASSIGNEE OF THIS CONTRACT SHALL NOT BE RESPONSIBLE FOR CLAIMS, LIABILITIES, OR DAMAGES WHICH ACCRUED PRIOR TO THE DATE OF SUCH ASSIGNMENT.

24. DELAYS. WE HAVE NO RESPONSIBILITY OR LIABILITY TO YOU OR ANY OTHER PERSON FOR DELAYS IN THE INSTALLATION OR REPAIR OF THE SYSTEM OR THE PERFORMANCE OF OUR SERVICES, REGARDLESS OF THE REASON, OR FOR ANY RESULTING CONSEQUENCES. WE HAVE NO RESPONSIBILITY OR LIABILITY FOR INTERRUPTIONS OF SERVICE, OR ANY RESULTING CONSEQUENCES, WHETHER DUE TO STRIKE, RIOT, FLOOD, FIRE, TERRORISM, ACT OF GOD, OR ANY OTHER CAUSE BEYOND OUR CONTROL. DURING ANY SUCH SERVICE INTERRUPTION, WE HAVE NO OBLIGATION TO SUPPLY YOU SUBSTITUTE SERVICES.

25. ELECTRONIC MEDIA; PERSONAL INFORMATION. You agree that we may scan, image or otherwise convert this Contract into an electronic format of any nature. You also agree that a copy of this Contract produced from such electronic format is legally equivalent to the original for any and all purposes, including litigation. Likewise, you agree that our receipt by fax of the Contract signed by you legally binds you and such fax copy is legally equivalent to the original for any and all purposes, including litigation.

You confirm that the personal information about you and third parties that you provided to us is true and complete and that you shall notify us without delay of any change to this information. You consent to our use of your personal information and that of third parties that you provided to us for the purpose of monitoring, setting up and administering your security services (including credit approval, invoicing, collection and to provide you with information on new services or equipment). You have obtained the consent of the third parties, whose personal information you provided to us, to use such personal information for the administration of your account with us and as provided in this Contract. You consent and agree that we may collect (including your consent to record your telephone conversations with our representatives), use, disclose and transfer your personal information and that of third parties provided by you to our parents, affiliates, subsidiaries and our successor corporations, any sub-contractor or assignee of this Agreement or any applicable authority having jurisdiction that requests such information to administer alarm monitoring services or alarm system license, permit or similar programs.

26. MEDICAL - You understand and accept that we specifically disclaim any responsibility for Services associated with the notification or dispatching of paramedics, doctors, and other medical personnel and/or ambulance services and if there are any charges incurred as a result of said notification, said charges shall be your responsibility, whether requested or not and whether such entities were correctly or incorrectly notified by us.

27. TESTING: It is your responsibility to test the Equipment monthly by calling us at 1-800-369-0996 (and follow the prompts).

28. THIRD PARTY INSTALLATIONS: In the event your Equipment was not installed by us or our subcontractor, we make no warranty or representation that the equipment will function properly and we reserve the right to terminate our obligations under this Contract at any time with written notice to you. You acknowledge that if the Equipment was installed by a third party, that the relationship between the third party is that of principal and independent contractor, and not of an employer and employee.

29. NOTICES AND GENERAL LEGAL MATTERS: A. Unless otherwise provided in the Contract all notices under this Contract are to be signed and dated, in writing, and are to be sent by US Mail, postage prepaid, addressed to us or you at the address shown on the front of this Contract. We will notify each other in writing of any change of address for the purpose of giving notice under this Contract. Notices are effective five (5) days after the date sent. B. If a court determines that any provision of this Contract is invalid or unenforceable, that provision shall be deemed amended and enforced to the maximum permitted by state law, however, each and every other provision of this Contract shall continue to be valid and enforceable. C. The accompanying Emergency Information Schedule, Schedule of Protection, and any applicable riders or addendums are incorporated into and made part of this Contract.

30. INSPECTION SERVICE: Where Inspection Service is provided under this Contract, we will perform periodic inspections of the Equipment in the manner and frequency indicated on the front side of this Contract. You authorize us to make any repairs necessitated by damaged or malfunctioning Equipment noted during such an inspection. You further agree to pay us for service and equipment charges in connection with those repairs at the then current rates charged by us unless you purchased Extended Limited Warranty Service under the terms listed in this Contract.

31. INVESTIGATOR RESPONSE SERVICE: Where Investigator Response Service is provided under this Contract, we have entered into a separate agreement with an Investigator Response Service to provide Investigator response as your option. Neither we nor the Investigator Response Service will be liable for any or Investigator Response Service's failure to perform hereunder due to acts of God, fire, strikes, work stoppages, difference with workmen, restrictions imposed by government agencies, war, terrorism, riot, or any cause beyond our or the Investigator Response Service's control as the case may be. Investigator Response Service may be terminated or substituted at any time at our option.

32. ENTIRE CONTRACT. THIS CONTRACT AND THE ACCOMPANYING SCHEDULE OF PROTECTION AND EMERGENCY INFORMATION SCHEDULE CONSTITUTE OUR ENTIRE CONTRACT. THE TERMS AND CONDITIONS OF THIS CONTRACT APPLY AS PRINTED WITHOUT ALTERATION OR QUALIFICATION, UNLESS A CHANGE IS APPROVED IN WRITING BY OUR AUTHORIZED REPRESENTATIVE. THE TERMS AND CONDITIONS OF THIS CONTRACT SHALL GOVERN EVEN IF YOU SUBMITTED A PURCHASE ORDER OR OTHER DOCUMENT WITH INCONSISTENT OR ADDITIONAL TERMS AND CONDITIONS.

33. LICENSE INFORMATION: AL Alabama Electronic Security Board of Licensure, 7956 Vaughn Rd., PMB 292, Montgomery, AL 36116 (334) 264-9388: AR Regulated by Arkansas Bd. of Private Investigators & Private Security Agencies, #1 State Police Plz. Dr., Little Rock, AR 72209 (501) 618-8600: CA Alarm company operators are licensed and regulated by the Bureau of Security and Investigative Services, Department of Consumer Affairs, Sacramento, CA, 95814. Upon completion of the installation of the alarm system, the alarm company shall thoroughly instruct the purchaser in the proper use of the alarm system. Failure by the licensee, without legal excuse, to substantially commence work within 20 days from the approximate date specified in the agreement when the work will begin is a violation of the Alarm Company Act: NM The Construction Industries Licensing Act does not protect the consumer if the contractor defaults.: NY Licensed by NYS Dept. of State: NC Alarm Systems Lic'g Bd., 1631 Midtown Pl., Ste. 104, Raleigh, NC 27609 (919) 875-3611: TX Texas Commission on Private Security, 5805 N. Lamar Blvd., Austin, TX 78752-4422, (512) 424-7710.